Good morning, Your Honors. May it please the Court. Your Honor, this is a case before the Court on a de novo review on summary judgment, and the parties who briefed most of the legal issues, I think, with the exception of a couple of arguments, were substantially in agreement about the burden in this case. I want to take a moment, if I may, Your Honor, to focus on some of the facts in this case. In particular, in 1996, the Defense Contract Management Agency decided to institute a series of positions which are described in the briefs. Our opposition that has been filed here indicates that the trial judge failed to consider a material fact which we believe demonstrates that the agency's response or their legitimate management reasons that they gave was discredited and was untrue. In particular, with respect to the cost-price position, there are certain standards that are set forth. We included in our appendix a copy of the Merit Promotion Program. In particular, Mr. Williams, who was also the other interview panelist who provided a statement, stated that he did not recall Mr. Butler at all, so he provided no information. Mr. Butler's credentials at page 62 of the appellant's or the agency's submission, the appellee's submission, shows that, in fact, he had substantial cost pricing, exceptional. He received several sustained superior awards. So, with respect to the cost pricing position, the agency's response was contained in the statements who stated that Mr. Butler interviewed fairly well, and number two, he did not believe Mr. Butler had any experience in the cost pricing area. That's specifically rebutted by the applications which are in the record. His credentials also contain references which indicate his superior performance in this particular area. Now, the other question is, why would that be significant? Because when we go to the issue of who was selected in the area of price costing and price analysts, we find that there are several candidates who had no experience at all within this particular area. And their credentials are shown at 125, pages 125, 127, and 130 of the agency's supplemental appendix. So, I would submit that there was certainly an issue with respect to the rationale provided by the agency. It just simply wasn't credible. There were three persons who provided evidence. One stated he didn't remember Mr. Butler at all. The one who did recall said he did not have any experience, which obviously the record shows is incorrect. And the third person, the record doesn't contain any statement from. I think it's also important to look back at the issue in the promotion program package that we submitted, indicating that the agency has a burden in this case when they conduct a review at the GS-13 standards to actually keep records of the ratings, to indicate why one candidate was selected and other candidates were not. And in this case, the only thing that we find, the only reason that the agency gave with respect to the cost pricing are reasons that we have proven that are not valid, not credible. And in addition to that, the evidence shows when you compare just a side-by-side comparison, Mr. Butler's credentials with those of the people selected, you find that people who were selected were not selected at all within the discipline for which job they were being required to perform. So we believe that that raises a substantial issue of fact. It doesn't, under McDowell-Douglas, shift the burden of the plaintiff then to overcome what is an incredible reason that is submitted by the agency. The only other reason that is submitted deals with the issue of communication. And I would ask that the panel review the definition and the credentials of communication because it's specifically defined. And the oral or written portion of that only constitutes 50 percent of the by how well a person interviewed or how well that they answered questions with the panel. For example, it specifically sets out four criteria under the area of communication. And that includes how well they manage information technology, how well they're able to communicate with respect to the information technology. But as a refutation of the claim that Mr. Butler doesn't communicate well, we have included in our package the testimony of Ida Wade. That's at 64 of the appellant's submission. And in that, she indicates that she was his supervisor for the year before, the time period right before the interviews in this place, in this case, took place. And it was her opinion that the area in which he worked, which is the price cost analysis area, that she had given him a sustained superior performance. His ratings were significantly above average. And with respect to his communication skills, the question was asked, what was her opinion about his communication skills? And she stated that it was good. So I would say that we submit that the issue that we've raised is that there is evidence that creates a charitable issue of fact with respect to both the contract management position and the cost pricing position. Kagan. Thank you, Mr. Matthews. I'm pleased to report Tom Buck, United States Attorney's Office, on behalf of the Secretary of Defense. This is a Title VII promotion case in which in 1997 and early 1998, the Defense Contract Management District for Western United States created professional trainer and monitor positions, trainer and manager positions in several areas of expertise. Two that are relevant here are contract pricing and contract administration. It then exercised its prerogatives as an employer and manager to select the persons that it believed would fill those positions most effectively. That's particularly relevant to a remark that was just made regarding Mr. Bauer's declaration. And specifically, excuse me one moment. Mr. Bauer was on the panel that dealt with price-cost analysis. These two areas of expertise are distinct areas of expertise within that organization, and the organization's purpose was to select those persons who were going to perform most effectively in each of those two areas. So each of the two panels that were selected were distinct. There was a panel for contract administration, and there was a separate panel for price-cost analysis. On the cost-price analysis panel, Mr. Bauer, as Mr. Matthews states, was one of the panelists. But Mr. Bauer did not state that Mr. Butler, the plaintiff here or an appellant, had no experience in cost-price analysis or no cost-price experience. Specifically, what Mr. Bauer's affidavit states is that, quote, he did not have as strong a background in contract pricing as some of the other candidates, as some of the other candidates, including the recommended candidates. The role of the panels was not to select. The role of the panels was determined based upon the written information submitted by the candidates and their interviews, who they would recommend to the deciding or selecting official, Mr. Glandini. He also stated, that is, Mr. Bauer also stated in his affidavit, I believe that most of his, Mr. Butler's, background was in contract administration. He certainly did not state that he had no background in contract pricing or cost-price analysis. He also didn't say, excuse me, also, because he made reference to the fact that he had, did not have as strong a background in cost, excuse me, in contract pricing as some of the other candidates, including those recommended, he wasn't saying that there might not be candidates who they also interviewed who, in fact, had more contract pricing experience than did Mr. Butler. But the, the most important fact here is that the agency was using its criteria to determine whom to recommend. And I'd like to draw the court's attention to the job announcements in each of these, these two areas. Those two job announcements are found in the supplemental excerpts of record at Exhibits 1 and 2, specifically pages 17, the first page of the record, at Exhibits 1 and 2, specifically pages 17, the first page of the job announcement for contract administrator, and page 20, the first page for contract price analysis. Mr. Butler's briefs focuses on the qualifications to be considered as a candidate for these positions. But page 2 of each of these job announcements lists the ranking factors, which should be considered in deciding who to recommend for this position. And those ranking factors place 70 percent of the weight on so-called knowledge, skills, and abilities, which include the ability to communicate, the ability to mentor, not the accolades and education that was the focus of Mr. Butler's methodology as, as ascribed in his deposition testimony. And I think that's all I have to say. I'd like to spend a little time with Mr. Are there other? You know what? I don't think we have any questions. I'm sorry? I don't think we have any questions. So if you feel you need to make a few other points, go ahead. There were workplace remarks that were not, excuse me, workplace remarks that indicated discriminatory intent that we do not have here. Furthermore, there was no, there is, in this case, no shifting of criteria as occurred in Bergeen. The criteria remained the criteria throughout, as stated in the job announcements. If thus there are further questions, I would submit. I just wanted to briefly provide the one citation in the supplemental access to records for the agency. That's 125, 127, and 130. And 130 in particular, that candidate was found never to have had a contract cost price analyst position. So keeping in mind that the, with respect to that area, the only evidence we have is that Mr. Bauer was saying that the other candidates had a stronger cost price background, certainly with respect to this candidate, who was selected for the exact position that Mr. Butler was seeking, had no experience in that area. So we believe that it raised the question of fact, how they could make a finding that Mr. Butler's cost pricing background was not as strong as someone who had never been in the area.
judges: Rymer, Wardlaw, Smith